UNITED STATES *v.* NORTH AMERICAN MERCANTILE CO. (No. 3207)[1]

United States Court of Customs and Patent Appeals, January 15, 1930

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty* and *James R. Ryan,* special attorneys, of counsel), for the United States.

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellee.

[1] T. D. 43820.

[Oral argument December 10, 1929, by Mr. Ryan and Mr. Baldwin]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The importer entered certain goods at the port of San Francisco as straw sandals. These were of two kinds. Those represented by the sample known as Exhibit 1 are described by the appraiser in his advisory return as—

Hemp-soled straw sandals (2682): The main portion consists of a straw braided on a cord of straw fiber, which takes the place of an inner sole, on the under side of which is sewn palm leaf and braided hemp fiber, which takes the place of the sole. They are held on the foot by a thong or upper made in chief value of cotton cloth.

This cloth portion consists of two fabricated, rounded, straplike pieces, each about 9 inches in length, five-eighths of an inch in width, and three-eighths of an inch in thickness. Each of these pieces is composed of an outside cotton pile fabric covering, sewed together, inclosing several pieces of buckramlike cloth and paper, folded carefully, to make a filling. These straps are securely fastened by sewing into the sides of the soles and are fastened together where they cross over the front of the foot.

The other kind is represented by Exhibit 2, and is thus described by the appraiser:

Rubber-soled straw slippers (2683): They are made with an upper sole of straw braided on a straw cord, to which is sewn an under sole of rubber. They are held on the foot by a thong, which takes the place of an upper, the chief value of which is cotton.

These thongs, or uppers, are attached in the same manner as Exhibit 1; they are also made in somewhat the same way, but with more ornamentation; the outside covering is made of two pieces of cloth, sewed together, and the filling is of vegetable fiber, packed and inclosed in a paper covering.

The collector classified the goods as other footwear, the uppers of which were in chief value of cotton, under paragraph 1405 of the Tariff Act of 1922, which is as follows:

PAR. 1405. Boots, shoes, or other footwear, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, or silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other material, 35 per centum ad valorem.

The importer made several claims in his protest but relies upon his claim under paragraph 1439 of said act, as manufactures of straw and rubber. The relevant provision of that paragraph is:

PAR. 1439. Manufactures of bone, chip, grass, horn, quills, india rubber, gutta-percha, palm leaf, straw, weeds, or whalebone, or of which these substances or

any of them is the component material of chief value, not specially provided for, 25 per centum ad valorem; * * *

The United States Customs Court sustained the protest under said paragraph and the Government appeals.

On the trial in the court below, the testimony of three witnesses was introduced, one on the part of the importer and two in behalf of the Government. The testimony of these witnesses, if intended to establish a commercial designation for the term "upper," fell far short of that end. The best that can be said for it is that each witness gave his opinion as to the common meaning of the term "upper," the witness for the importer expressing his opinion that the articles in dispute were not uppers and the witnesses for the Government being equally positive that they were uppers. Nothing is to be gained from such testimony, except as the court may use it as an aid in determining the common meaning of the statutory term used. In fact, counsel for the importer concedes, in his oral argument, that this evidence does not establish commercial designation.

It is, however, insisted by counsel that within the common meaning of the word the portions of the footwear above the sole, now before us, are not uppers. Importer concedes that this court held that similar portions of wooden-soled getas or clogs were uppers, in *United States* v. *Shokai*, 14 Ct. Cust. Appls. 392, T. D. 42033, but contends that the court should now find and announce another and a different common meaning for the word "upper." In support of this position, counsel cites definitions of the word "upper," given by several lexicographers, not cited by this court in the *Shokai* case, *supra*, and which it is contended show that the disputed portions of this footwear are not uppers. In this view the Customs Court seems to have coincided and, irrespective of our holding in the *Shokai* case, has held the portions of the imported articles in question here, above the soles, to be not uppers.

This matter was thoroughly considered by the court in the *Shokai* case. In that case the footwear consisted of wooden clogs or soles, each with a V-shaped cloth strap, made up similarly to those before us here, above the sole, to hold the clog on the foot. We held these cloth straps to be uppers. In doing so we cited the definitions given by leading lexicographers. Of compelling importance, in that case and here, is the apparent intent of Congress in enacting this paragraph. In the *Shokai* case we called attention to the Summary of Tariff Information, 1920, furnished for the use of the Congress in the preparation of the Tariff Act of 1922, wherein it was stated, in referring to this paragraph:

The "upper" includes all of the shoe except the sole.

We also stated:

In this case, as in *United States* v. *Kahn & Co., supra*, it must be remembered that we are considering the meaning of a provision which pertains to *footwear* as well as to boots and shoes, and Congress, by the use of the word "footwear," must have recognized that there was a class of wear for the feet that might not be embraced in either of the words "boots" or "shoes."

Attention is directed to our opinion in *United States* v. *Kahn & Co.*, 13 Ct. Cust. Appls. 57, T. D. 40881, where we held that the Congress, in enacting said paragraph 1405, indicated quite plainly that the test of the dutiability of footwear under that paragraph was whether there was a sole and a line of demarcation between the sole and the portion above the sole. Here we have a sole and an upper portion of the footwear. If this upper portion is not an upper, what is it? In the paragraph, Congress provided for footwear with soles of "leather, wood, or other material." Is it reasonable to assume that the Congress did not have in mind, in enacting this paragraph, the sandals of the Chinese and other peoples, the use of which dates back into the remote centuries of the past, and which have doubtless been imported into this country from the earliest days of our national existence?

In the *Shokai* case we announced a common meaning for the term "upper" as used in this paragraph. No change in the common meaning of the word since that announcement is contended for or shown. The word "upper" is a word of common speech, and, as such, its interpretation was within our judicial knowledge at the time of our judgment and opinion in the *Shokai* case, and was, therefore, matter of law. *Marvel* v. *Merritt*, 116 U. S. 11; *Sonn* v. *Magone*, 159 U. S. 417. As such, it was binding upon the Customs Court in this case, and error was committed by it in not following the law thus announced.

Since the institution of this court, it has been the practice of the court, when it has once determined the common meaning of a term used in a statute, to adhere to such common meaning until a legislative change in the statutory enactment in question necessitated a changed determination of such meaning. *United States* v. *Felsenthal & Co.*, 16 Ct. Cust. Appls. 15, T. D. 42713, and authorities therein cited. This practice, or rule, is one founded on reason and tends to promote commerce and ease and celerity of administration of the customs laws by making them more definite and stable in meaning, and better understood by those engaged in trade.

In our opinion, this case is ruled by *United States* v. *Shokai, supra*, and the judgment of the Customs Court is *reversed*.

GARRETT and LENROOT, Judges, dissent.