UNITED STATES *v.* FELTMAN BROS., INC. (No. 3852)[1]

United States Court of Customs and Patent Appeals, March 25, 1935

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General), for the United States.
*Walden & Webster* (*J. L. Klingaman* of counsel) for appellee.

[Oral argument February 4, 1935, by Mr. Lawrence and Mr. Klingaman]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Certain silk footwear (called bootees) for babies, which footwear had been elaborately embroidered, was classified by the collector under paragraph 1529 (a), Tariff Act of 1930, the pertinent provisions of which paragraph read as follows:

PAR. 1529 (a). * * * and fabrics and articles embroidered * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished (except materials and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem. * * *

The importer protested the classification and among other claims asserted that the merchandise was dutiable under paragraph 1530 (e), of said act, which reads as follows:

PAR. 1530 (e). Boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for, 20 per centum ad valorem; boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other materials, 35 per centum ad valorem.

The United States Customs Court sustained the protests as to a part of the merchandise and overruled them as to the remainder. The Government has appealed from the judgment of the trial court

insofar as the protests were sustained. No appeal was taken by the importer from the judgment of the trial court which held a portion of the merchandise not to be dutiable under said paragraph 1530 (e) and that the same was properly classified by the collector.

The testimony of the witnesses shows that the footwear at bar was intended for and is suitable for use only for babies in arms. It is conceded that the shoes were not intended to be worn in walking, and that the delicate nature of the footwear as a whole, and especially of the bottoms, renders them unsuitable for coming into contact with the ground or other surface in walking.

It will be observed that fabrics and articles embroidered which are described in paragraph 1530 (e), *supra*, are specifically exempted from paragraph 1529 (a), *supra*, and the sole question involved here is whether or not the merchandise at bar is "boots, shoes, or other footwear" such as are provided for in paragraph 1530 (e).

The importer contends, and the trial court held, that the case of *United States* v. *Kahn & Co.*, 13 Ct. Cust. Appls. 57, T. D. 40881, is determinative of the issue involved. In that case the merchandise was babies' footwear, knitted, composed wholly or in chief value of wool. The infants' bootees there, from top to bottom, were the result of a continuation of knitting, and there was no division into uppers and soles as separate parts. We there said:

In construing paragraph 1405, its apparent purpose must be borne in mind. Obviously, it is intended to embrace boots and shoes having uppers and soles of the various materials named in the paragraph and other footwear of a similar character. It is true that the uppers and soles of such footwear may be of wool, as well as the other materials specifically mentioned. But it manifestly was not the intent to include therein all footwear. Paragraph 1114, *supra*, provides for hose and half hose, made of wool, paragraph 916 for hose and half hose made of cotton, and paragraph 1208 for hose and half hose made of silk, and yet all these are footwear. The articles in question have a well-known name, "bootees", and resemble more nearly in their form and use hose than they do boots and shoes made with uppers and soles.

It is a reasonable assumption that Congress intended, by the language used in paragraph 1405, to include only such boots, shoes, and other footwear as were manufactured with uppers and soles and that there should be on inspection some visible line of demarcation between such uppers and soles in each instance. Here the record shows there is no such distinction. We believe this is a proper case for the application of the doctrine of *ejusdem generis* and that paragraph 1405 should be construed as including boots and shoes, with uppers and soles made of the various materials named in the paragraph, and other footwear of like materials and of similar use and form. * * *

The Government argues that while there is a line of demarcation between the uppers and soles of the bootees at bar, the court should hold that paragraph 1530 (e) was only intended to include such footwear which is "usually and ordinarily worn for warmth, comfort, and protection to the wearer *while walking* or otherwise when such footwear is in contact *with the ground, floor, or other surface,*" and points

out that in the *Kahn & Co.* case, *supra*, the court used the expression which is above quoted "and other footwear of like materials and of similar use and form". The Government stresses the fact that while all of the bootees at bar have, either by stitching or the attachment of separate soles, a definite line of demarcation between the sole and the top or upper, the sole should not be regarded as a sole since it was not intended to be used as shoe soles are ordinarily used, and that the paragraph should not be held to include shoes which have soles only in an ornamental sense.

We cannot agree with the contentions of the Government. While paragraph 1530(e) is associated with leather and leather articles, it nevertheless provides for footwear which contains no leather. After very careful consideration, this court in the *Kahn & Co.* case definitely held that "there should be on inspection some visible line of demarcation between such uppers and soles in each instance." This holding was made with reference to paragraph 1405, Tariff Act of 1922. Congress, in the Tariff Act of 1930, in respects material here, used substantially the same language which it had used in the Tariff Act of 1922. This we regard as legislative approval of judicial interpretation.

Subsequent to our decision in the *Kahn & Co.* case, we had the same paragraph of the Tariff Act of 1922 under consideration in *United States* v. *Shokai*, 14 Ct. Cust. Appls. 392, T. D. 42033, and in *United States* v. *North American Mercantile Co.*, 17 C. C. P. A. (Customs) 378, T. D. 43820. In the *Shokai* case we held, basing our decision upon the *Kahn & Co.* case, that Japanese clogs with wooden soles to which were attached thongs which were held between the toes to hold the clogs on the feet, had soles and uppers and were, therefore, footwear, under said paragraph 1405.

In the *North American Mercantile Co.* case, this court held hemp-soled straw sandals, which had a line of demarcation between the upper and the sole, to be dutiable as footwear under paragraph 1405, Tariff Act of 1922, and based the decision largely upon our decision in *United States* v. *Shokai*.

Congress, in paragraph 1530(e), *supra*, did not expressly or impliedly exempt from the provision footwear with thin, flimsy soles of cloth, or cloth and paper, but stated "whether or not the soles are composed of leather, wood or other materials". We think that the bottoms of the articles at bar should be regarded as soles, and that the parts attached to the soles and extending upward to the top should be regarded as the uppers. There is nothing in the context of the provision and nothing in the legislative history, which has been suggested to us, which would indicate that Congress did not intend for footwear such as is at bar to be dutiable under paragraph 1530 (e) merely because the shoes were not intended to be used in walking.

We do not think the expression "and of similar use and form", used by this court in the *Kahn & Co.* case, *supra*, was used in such a sense as to amount to a holding that footwear which was not used in walking or which did not come in contact with the ground or other surface should not be regarded as footwear within the meaning of the provision.

The judgment of the United States Customs Court is *affirmed.*