**CASTELAZO & ASSOCIATES a/c Stonewall Trading Company**

**v.**

**UNITED STATES.**

**C.D. 3486; Protests 63/10112–70554, etc.**

United States Customs Court,
First Division.
June 24, 1968.

Stein & Shostak, Los Angeles, Cal. (Leonard M. Fertman, Los Angeles, Cal., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Arthur E. Schwimmer, New York City, trial attorney), for defendant.

Before WATSON and MALETZ, Judges.

WATSON, Judge:

The merchandise in the cases at bar consists of footwear having rubber soles and vinyl uppers with fur-trimmed vinyl buttons glued thereon. (Plaintiff's exhibit 1.) The importation was classified under paragraph 1530(e) of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, at the rate of 20 per centum ad valorem as footwear with uppers in chief value of animal hair and soles wholly or in chief value of india rubber.

Plaintiff claims the merchandise properly classifiable under paragraph 1537(b) of the tariff act, as modified, *supra,* as footwear in chief value of india rubber.

The pertinent statutes here under consideration are as follows:

Paragraph 1530(e) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877:

Boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile,

silk, or substitutes for any of the foregoing:

With soles wholly or in chief value of india rubber or substitutes for rubber . . . . 20% ad val.

Paragraph 1537(b) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877:

Manufactures of india rubber or gut-tapercha, or of which these substances or either of them is the component material of chief value not specially provided for (except * * *):

Boots, shoes, or other footwear, wholly or in chief value of india rubber . . . 12½% ad val.

The issue in this case is as stated in plaintiff's brief (page 2) as follows:

Since the fur in the fur-trimmed vinyl button which is glued to the upper of the footwear at issue herein, is the only portion containing a component specified in Par. 1530(e) of the Tariff Act of 1930 as modified, does its presence require classification of the merchandise under said paragraph, or does the button merely constitute an ornamental accessory or trim, which is not part of the upper, as contended by the plaintiff?

The evidence in this case consists of the testimony of one witness on behalf of the plaintiff and two exhibits (plaintiff's exhibits 1 and 2).

On behalf of the plaintiff, Mr. Lew Jackson testified that he was an importer of footwear and that he had been in the footwear and glove business for 17 years, manufacturing those products for the first 10 years and importing them for the past 7 years. (R. 5–6.) He stated that as a manufacturer and importer he had become familiar with the various styles of footwear imported into the United States. The witness described plaintiff's exhibit 1, a representative sample of the merchandise at bar, as a lady's folded casual slipper, style number 845 with a rubber sole, a vinyl upper, and a fur button as a trim or accessory, the button being cemented to the toe, or upper. Plaintiff's witness further testified that the fur button was used strictly for decorative or ornamental purposes and that removal of the button would not damage the slipper nor render the shoe unsaleable or unserviceable as footwear. He stated that he had on many occasions imported other shoes which were like plaintiff's exhibit 1 except that they did not have the ornamental trim. (R. 7.) A sample of slipper style number 845 with the fur-trimmed button removed was received in evidence as plaintiff's exhibt 2.

Mr. Jackson further testified that while in Japan he had discussed the design of the shoes imported by him and that some were to be completely plain, free of any ornament or decoration, in order to make up an assortment. The witness testified that, based upon his experience in the footwear business, he considered the top part or shell of the slipper, above the sole, to be the "upper" of the slipper; that with reference to plaintiff's exhibit 1, the upper part consists of the shell; and that the fur-trimmed vinyl button is not part of the upper. He further stated that, in his experience, people in the footwear trade do not consider the fur button in question as part of the upper of the slipper. (R. 10–11.)

On cross-examination, plaintiff's witness testified that exhibit 1 was in its condition as imported; that the fur button was part of the shoe as imported; and that it was not part of the sole. (R. 11–12.)

Our courts have previously passed upon the question as to what constitutes "uppers" with respect to footwear. In United States v. Shokai, 14 Ct.Cust.App. 392, T.D. 42033, certain Japanese footwear known as "getas", which are wooden clogs or soles, attached to the foot by fabric straps passing through perforations in them, were held dutiable under paragraph 1405 of the Tariff Act of 1922 under the provision therein for "Boots, shoes, or other footwear, the uppers of which are composed wholly or in

chief value of wool, * * *, or silk, * * * whether or not the soles are composed of leather, wood, or other material." The importer therein had claimed that the merchandise should have been held dutiable under paragraph 410 of the pertinent act as manufactures in chief value of wood.

The question presented in the *Shokai* case, supra, was whether the straps or thongs of fabric "uppers" were within the meaning of the term as used in paragraph 1405, supra. The court therein cited, *inter alia*, the definition given in the Summary of Tariff Information, 1920, page 704, as follows:

> The "upper" includes all of the shoe except the sole. * * *

Based upon the above definition and others referred to, the court in the *Shokai* case, supra, held that the common meaning of the term "uppers" was broad enough to include the straps and thongs in the merchandise there involved.

In United States v. North American Mercantile Co., 17 CCPA 378, T.D. 43820, the merchandise consisted of two kinds:

> [Exhibit 1] Hemp-soled straw sandals * * *: The main portion consists of a straw braided on a cord of straw fiber, which takes the place of an inner sole, on the under side of which is sewn palm leaf and braided hemp fiber, which takes the place of the sole. They are held on the foot by a thong or upper made in chief value of cotton cloth.

The straps were securely fastened by sewing into the sides of the soles and were fastened together where they cross over the front of the foot. The other kind (exhibit 2) consisted of rubber-soled straw slippers. "They are made with an upper sole of straw braided on a straw cord, to which is sewn an under sole of rubber. They are held on the foot by a thong, which takes the place of an upper, the chief value of which is cotton." The thongs or uppers in exhibit 2 were attached in the same manner as exhibit 1. The collector classified the

goods as other footwear, the uppers of which were in chief value of cotton, under paragraph 1405 of the Tariff Act of 1922. The importer claimed the goods dutiable under paragraph 1439 of the act as manufactures of straw and rubber. The court in the *North American* case, supra, held the merchandise properly dutiable under paragraph 1405 of the act, as classified. In so holding the court, page 381, stated:

> In the *Shokai* case we announced a common meaning for the term "upper" as used in this paragraph. No change in the common meaning of the word since that announcement is contended for or shown. The word "upper" is a word of common speech, and, as such, its interpretation was within our judicial knowledge at the time of our judgment and opinion in the *Shokai* case, and was, therefore, matter of law. Marvel v. Merritt, 116 U.S. 11 [6 S.Ct. 207, 29 L.Ed. 550]; Sonn v. Magone, 159 U.S. 417 [16 S.Ct. 67, 40 L.Ed. 203]. As such, it was binding upon the Customs Court in this case, and error was committed by it in not following the law thus announced.

Since the institution of this court, it has been the practice of the court, when it has once determined the common meaning of a term used in a statute, to adhere to such common meaning until a legislative change in the statutory enactment in question necessitated a changed determination of such meaning. United States v. Felsenthal & Co., 16 Ct.Cust.Appls. 15, T.D. 42713, and authorities therein cited. This practice, or rule, is one founded on reason and tends to promote commerce and ease and celerity of administration of the customs laws by making them more definite and stable in meaning, and better understood by those engaged in trade.

In our opinion, this case is ruled by United States v. Shokai, supra, and the judgment of the Customs Court is *reversed.*

Plaintiff in support of its claim herein, directs our attention to the holding

of the court in Pitt & Scott v. United States, 55 Treas.Dec. 798, T.D. 43408. The merchandise involved in that case consisted of shoes, with silk uppers, having silver ornaments permanently attached thereto, the ornaments being the component material of chief value in the entirety. The shoes in question were classified under the provision in paragraph 1428 of the Tariff Act of 1922 for "articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, * * * and like articles * * * composed of metal." Plaintiff claimed the merchandise properly classifiable under paragraph 1405 of said act as "Shoes * * * the uppers of which are composed wholly or in chief value of * * * silk."

In the *Pitt & Scott* case, *supra*, the customs official who had appraised the merchandise, testified that the silver ornaments there in question did not perform any service in holding the shoe together and that "they are merely made to *ornament* the shoe itself, the same as any other buckle attached to the shoe to serve an ornamental purpose". [Emphasis quoted.] The court therein held the involved footwear properly classifiable under said paragraph 1405 of the relevant tariff act and, in its decision, page 803, stated that the buckle " * * * is a part of the shoe and permanently attached thereto. To remove it from the shoe would without doubt injure the shoe. * * * It is a part of a shoe with *uppers in chief value of silk* * * *." [Emphasis supplied.] Similarly, in the case at bar, the fur-trimmed vinyl button on the imported slipper is a part of the slipper in the sense that it is attached to the slipper. However, in our opinion, it does not constitute a part of the "upper" for tariff purposes. This conclusion is fortified by an examination of the sample of the imported shoe, which is a potent witness. United States v. Halle Bros. Co., 20 CCPA 219, T.D. 45995.

The record in this case establishes that the fur-trimmed vinyl button attached to the slipper is a purely ornamental decoration, which performs no utilitarian function, and that its addition to the slipper does not make the footwear any more useful. As heretofore stated, the fur-trimmed vinyl button, while a component of the entire unit comprising the slipper, is not, in our opinion, a part of the upper of the footwear. For these reasons, the holding of the court in *Shokai* and *North American Mercantile Co.* cases, supra, are distinguishable from the case at bar. In those cases, the only issue presented was whether the merchandise under consideration had *any* "uppers" so as to be classifiable as footwear, or whether the merchandise in question was not classifiable as footwear but according to its component material of chief value, i. e., as manufactures of wood, straw, or rubber, etc. In the case at bar, the issue is whether the classification of a style of *footwear*, having a complete upper with a nonutilitarian ornament attached thereto, is affected by the presence of the ornamental fur-trimmed vinyl button. This question was not considered in the *Shokai* and *North American Mercantile* cases, supra, cited by the defendant in support of the collector's classification.

It has been conceded that the soles of the footwear at bar are of india rubber. Accordingly, for the foregoing reasons, we hold the involved merchandise properly dutiable under paragraph 1537(b) of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, at the rate of 12½% per centum ad valorem as footwear, wholly or in chief value of india rubber. The protests are sustained. Judgment will issue accordingly.

MALETZ, J., concurs.