UNITED STATES *v.* KAHN & CO. (No. 2522)[1]

CONSTRUCTION, PARAGRAPH 1405, TARIFF ACT OF 1922—FOOTWEAR—EJUSDEM GENERIS—WOÓL BABIES' SHOES.

Applying the doctrine of *ejusdem generis* paragraph 1405, Tariff Act of 1922, classifying boots, shoes, or other footwear having uppers of certain named materials and soles of any material, contemplates some visible line of demarcation between the uppers and the soles. This relegates knit wool babies' shoes to the collector's classification under paragraph 1114 as outerwear knit of wool.

United States Court of Customs Appeals, May 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 48440

[Reversed.]

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.
*Brooks & Brooks* for appellee.

[Oral argument Apr. 21, 1925, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The goods imported in this case are thus described by the appraiser, in his report to the collector:

The merchandise in question consists of knit baby's shoes composed wholly or in chief value of wool, valued at more than $2 per pound.

The collector classified the same for duty at 45 cents a pound and 50 per centum ad valorem under the following portion of paragraph 1114, Tariff Act of 1922:

Outerwear and other articles, knit or crocheted, finished or unfinished, wholly or in chief value of wool, and not specially provided for, valued at not more than $1 per pound, 36 cents per pound and 40 per centum ad valorem; valued at more than $1 and not more than $2 per pound, 40 cents per pound and 45 per centum ad valorem; valued at more than $2 per pound, 45 cents per pound and 50 per centum ad valorem.

The importer protested, claiming the goods to be properly classifiable under paragraph 1405 of said act, which is as follows:

1405. Boots, shoes, or other footwear, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, or silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other material, 35 per centum ad valorem.

---

[1] T. D. 40881.

On the hearing before the Board of General Appraisers, one witness, John C. McConnell, examiner of merchandise at the port of New York, testified. He testified as follows:

Q. Will you describe the merchandise, please?—A. The merchandise is what is known as infants' bootees; it consists of a wholly knitted—much the same as a stocking.

Q. It is footwear?—A. It is footwear, worn on the foot.

Q. By infants?—A. By infants only.

Q. And the uppers are entirely of wool?—A. The whole thing is of wool.

Q. Uppers and sole?—A. Everything.

*       *       *       *       *       *       *

Q. Mr. McConnell, were there any soles on these things?—A. There is no sole, except the knit fabric.

Q. It is all in one fabric, no sole at all?—A. It is a continuation of the knitting from the top to the bottom.

Q. And how high up the leg do they come?—A. Well, they are made for infants, and they are supposed to act as a stocking, also reaching up nearly to the knee, about 4 or 5 inches long.

There were no samples submitted. On this record the court below reversed the finding of the collector, and sustained the protest. In so doing, the court said:

following the decision in protest 972015 (Abstract 48245), the merchandise consisting of infant's wool bootees is held to be dutiable at 35 per centum ad valorem under paragraph 1405, act of 1922.

The record in Abstract 48245 was not incorporated in the record in the case at bar and hence, as was said in *United States* v. *Sheldon & Co.*, 13 Ct. Cust. Appls. 53, T. D. 40880, was not properly before the court below and has no evidentiary value in this case. This case therefore must be determined from the testimony of the witness McConnell, above quoted.

From such testimony it appears the infants' footwear in question is knitted from woolen yarn like a stocking, continuously from end to end, and without a division into upper and sole, as separate parts of the footwear.

In construing paragraph 1405, its apparent purpose must be borne in mind. Obviously, it is intended to embrace boots and shoes having uppers and soles of the various materials named in the paragraph and other footwear of a similar character. It is true that the uppers and soles of such footwear may be of wool, as well as the other materials specifically mentioned. But it manifestly was not the intent to include therein all footwear. Paragraph 1114, supra, provides for hose and half hose, made of wool, paragraph 916 for hose and half hose made of cotton, and paragraph 1208 for hose and half hose made of silk, and yet all these are footwear. The articles in question have a well-known name, "bootees," and resemble more nearly in their form and use hose than they do boots and shoes made with uppers and soles.

It is a reasonable assumption that Congress intended, by the language used in paragraph 1405, to include only such boots, shoes, and other footwear as were manufactured with uppers and soles and that there should be on inspection some visible line of demarcation between such uppers and soles in each instance. Here the record shows there is no such distinction. We believe this is a proper case for the application of the doctrine of *ejusdem generis* and that paragraph 1405 should be construed as including boots and shoes, with uppers and soles made of the various materials named in the paragraph, and other footwear of like materials and of similar use and form. *Robins* v. *United States*, 1 Ct. Cust. Appls. 252; *Austin* v. *United States*, 1 Ct. Cust. Appls. 465; *Reed* v. *United States*, 5 Ct. Cust. Appls. 95; *Morimura* v. *United States*, 2 Ct. Cust. Appls. 181 [185]; Lewis' Sutherland Stat. Con. (sec. 422). For the reasons given the judgment of the Board of General Appraisers is *reversed.*