PICKER X-RAY CORP. *v.* UNITED STATES (No. 4099)[1]

United States Court of Customs and Patent Appeals, March 28, 1938

*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Daniel G. McGrath,* special attorney, of counsel), for the United States.

[Oral argument February 7, 1938, by Mr. Puckhafer and Mr. McGrath]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges [2]

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, overruling the protest through which importer seeks to recover certain duties levied and collected by the Collector of Customs at the port of New York, under his classification of

[1] T. D. 49498.

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

merchandise invoiced as "foliencomb" and generally referred to in the record as "X-ray screens." The importations covered by the protest were made, respectively, in January and February 1932.

The merchandise was classified as cardboard, coated, and duties were assessed under that portion of paragraph 1413 of the Tariff Act of 1930, reading:

PAR. 1413. * * * paper board and pulpboard, including cardboard and leatherboard or compress leather, plate finished, super-calendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined, embossed, printed, or decorated or ornamented in any manner; press boards and press paper, all the foregoing, 30 per centum ad valorem; * * *.

Importer makes alternative claims insisting upon its classification as coated or metal covered paper under those portions of paragraph 1405 of the act, reading:

PAR. 1405. Papers with coated surface or surfaces, not specially provided for, 5 cents per pound and 15 per centum ad valorem; * * * papers wholly or partly covered with metal or its solutions (except as herein provided), or with gelatin, linseed oil cement, or flock, 5 cents per pound and 15 per centum ad valorem; * * * all other articles, composed wholly or in chief value of any of the foregoing papers, not specially provided for, * * * 5 cents per pound and 20 per centum ad valorem; * * *.

Other alternative claims were contained in the protest as filed, but no assignments of error respecting their denial by the trial court were assigned in connection with the appeal to this court.

So, the issue here seems to be reduced to the question whether the merchandise is coated cardboard within the terms of paragraph 1413, or some one of the three specified coated papers named in paragraph 1405.

By stipulation of the parties, it is agreed that the merchandise weighs more than fifteen pounds per ream of four hundred and eighty sheets, on the basis of twenty by twenty-five inches. So it does not, even were it found to be paper, fall within the proviso of paragraph 1405, and a claim thereunder was abandoned. It is shown by the report of the Government's chemist, who made an examination by direction of the trial court at the request of counsel for importer, that the coating is calcium tungstate.

It appears from the appraiser's answer to the protest that his advisory classification which the collector adopted was based on T. D. 45038, issued July 14, 1931. The purport of this Treasury decision is that, after a decision of this court (*Mandelstam* v. *United States*, 13 Ct. Cust. Appls. 58, T. D. 40882), under the Tariff Act of 1922, holding the merchandise there involved to be dutiable under paragraph 1305 of the act as "paper * * * surface coated for photographic purposes," which language was altered in the Tariff Act

of 1930, it had been the practice to classify X-ray screens under paragraph 1405 of the latter act, taking duty at 5 cents per pound and 15 per centum ad valorem; that the appraiser had reported that, in his opinion, the screens "are in fact coated cardboard provided for in paragraph 1413 * * *," and the collector was authorized so to classify such merchandise beginning thirty days after the ruling.

The importer relies principally upon our decision in the *Mandelstam* case, *supra*, it being argued in effect that at the time of the passage of the Tariff Act of 1930, Congress must be presumed to have had knowledge of our decision and hence that there was legislative ratification of the judicial determination. It is urged, of course, that the merchandise here is similar in all material respects to that involved in the *Mandelstam* case, *supra*, but the trial court, speaking through Kincheloe, J., held that importer had failed to meet the burden imposed upon it of showing that "the merchandise was coated paper, as distinguished from coated cardboard within the purview of said competing tariff provisions."

In discussing our decision in the *Mandelstam* case, *supra*, and comparing it with the present case, the trial court, *inter alia*, said:

Naturally, on that record, the court very properly expressed the conclusion that, "As the provision for surface-coated papers used for photographic purposes embraces nothing more than surface-coated papers devoted to one use, we must hold that it is clearly narrower and more specific than a provision for surface-coated papers the use of which is not designated or limited."

But no such state of facts is here presented. It is not even established that the present merchandise is a paper. The only testimony submitted is that it is coated cardboard, as classified by the collector. Nor have we any evidence whatever upon which to predicate a finding concerning its use. The sample in evidence shows that the first layer or coating may readily be removed leaving intact the coated surface on the board underneath.

It was the view of the trial court that the decision of that court in the case of *Adlanco X-ray Corp.* v. *United States*, T. D. 47567, 67 Treas. Dec. 387, is controlling here, the following comment being made:

In that case merchandise apparently of similar, if not perhaps of identical character, was classified and assessed for duty under paragraph 1413 of the act of 1930, as "cardboard, coated," and the same claims were made in the protest as here. But as the record failed to show that the merchandise was in fact coated paper instead of coated cardboard, the protest was overruled.

We regard the facts of the instant case as being clearly distinguishable from the facts recited in our decision in the *Mandelstam* case, *supra*. There the merchandise was *classified* as a coated *paper* of a particular kind and was claimed to be a coated *paper* of another kind—both kinds being classifiable under provisions of paragraph 1305 of the Tariff Act of 1922, but assessable at different rates of duty. There was no claim there under paragraph 1313 of the act, prototype

of paragraph 1413 of the Tariff Act of 1930, here involved, and we had no occasion there to consider whether the merchandise was coated *cardboard*.

It may be remarked that the language of the 1922 act, relating to paper to be used for photographic purposes, was changed in the 1930 act, and, superficially at least, the language of the present act (even if we were at liberty to assume that the instant merchandise is paper precisely similar to that involved in the *Mandelstam* case, *supra*), would appear to require its classification under a provision which carriers a duty rate of 30 per centum ad valorem—the same rate assessed under the present classification.

However that may·be, we think it must be held that the importer failed to overcome by proof the presumption of correctness which attaches to the collector's classification.

The judgment of the United States Customs Court is *affirmed*.