A. W. Fenton Co. *v.* United States [1]

[1] C. D. 40.

United States Customs Court, First Division

(Decided October 6, 1938)

*E. D. Howald* for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon*, special attorney), for the defendant.

Before McClelland, Sullivan, and Brown, Judges

Sullivan, Judge: At the opening of the trial of this case plaintiff's counsel stated the issue as follows:

Mr. Howald. This case involves the classification of certain glass beads which were returned under par. 1503, at 60%. The importer claims they are properly dutiable at 45% under par. 1503, as an imitation of a semiprecious stone. There is also a No. 66 wooden box, which has been classified as smokers' articles under par. 1552, and we contend that it is properly dutiable at 33⅓% under par. 412; also an item of silk baby shoes which were returned at 90% under par. 1529, and we claim they are properly dutiable at 35% under par. 1530, or alternatively at 65% as wearing apparel under par. 1210.

Evidence was first introduced as to the wooden boxes.

It was testified on behalf of the plaintiff that the wood of which this box is composed is poplar wood on the outside and that the lining is gumwood; that the proper kind of wood in which to keep tobacco products is cedar wood, and "It is generally accepted among cigar men that cedar wood is the only thing that is conducive to tobacco products"; that Exhibit 1 is not suitable as a container for tobacco products for the reason it is not of a suitable size, and the wood is not suitable.

Plaintiff's witness, Mrs. Franley, testified she is a housewife and uses a box like Exhibit 1 "for bobby pins and hair pins," and has seen the same kind of box used by others for postal stamps and buttons.

Mrs. Bedner, another housewife, testified she has a box "just like" Exhibit 1, and uses it as a container for "watches, rings, and chains," and she had seen it used in two other houses as a container for jewelry, pins, and shoe buttoners.

Defendant's witness Rouse testified he had seen boxes similar to Exhibit 1 "in several friends' houses," and that "all, *with the exception of one*, was being used as cigarette containers"; that he had seen them so used "a dozen or more" times. On cross-examination he testified that the boxes he had seen were exactly the same size, and that the material of which they were composed was identical with that in Exhibit 1, and that they were not cedar lined.

Defendant's witness Mericle testified he had seen boxes similar to Exhibit 1 "in the homes of various friends in different cities," and that as to their use "I can think of no other use right now except as cigarette holders," the cigarettes being placed therein loose "as taken from the packages and transferred to the box."

On cross-examination he testified such boxes were similar in "size, general construction, the dimensions;" that the size readily adapts itself to the length of a cigarette.

Exhibit 1 is before us. There is nothing about it to indicate it is a smoker's article. It is a neat wooden box about 4¼ inches in length, 3½ inches in width, and two inches in depth when the cover is closed. It is supported by four wooden feet, one at each corner. The lid is connected to the body of the box by two metal hinges. On the inside it is about 3⅛ inches by 2⅞ inches, by 1⅜ inches. The inside of the lid is about three-fourths of an inch in depth, so that the contents of the box can project a little over the top and still permit the lid to close.

The catch-all provision of paragraph 1552 provides for "all smokers' articles whatsoever * * * of whatever material composed." There is nothing about the appearance of the box to indicate it is a smoker's article. The presumption arising from the action of the collector is that it is a smoker's article. The Government did not introduce the evidence which led the collector so to classify it, and it would seem there was such evidence before him to cause him to classify it as he did. The Government merely introduced the testimony of two witnesses to show that the same or similar boxes had been used as containers of cigarettes. It was not shown that such was their *chief* use. Against this we have the testimony of an experienced cigar merchant that the wood of which these boxes are composed is not suitable for use in a container of tobacco products, because it is not cedar wood. We also have the testimony of two

housewives as to the use of these boxes as containers of pins, jewelry, postage stamps, buttons, watches, rings, chains, jewelry, and shoe buttoners; and, lastly, we have the evidence of the official sample itself, which, we think, is a potent witness for the plaintiff. It seems to us this merchandise is an ordinary knick-knack box, and, while it can be used for cigarettes, the evidence does not indicate it is *chiefly* used for such purpose. It seems unreasonable that this box should be held a smoker's article and dutiable as such at 60 per centum ad valorem on the mere testimony of two witnesses that they had seen it used as a container for cigarettes, in view of the testimony of plaintiff's witnesses, and the evidence of the sample itself.

It is evident from an inspection of this box that it is in chief value of wood, as the only metal in it is in two tiny hinges, and four small nails fastening the feet thereto. The box and lid are entirely of wood. We therefore hold it dutiable as claimed at 33⅓ per centum ad valorem under paragraph 412.

As to the beads, plaintiff's witness Greenfield testified he is familiar with the shipment involved in consular invoice 1497, and took a sample of such beads, being quality 6625. A sample thereof was received in evidence as Exhibit 2. This sample is a complete necklace composed of small green opaque beads of various sizes tightly strung and having a metal clasp. It is a complete article, and was classified as an article composed wholly or in chief value of beads under paragraph 1503.

Plaintiff's witness Deutsch testified he is in the jewelry business. He examined Exhibit 2 and testified, "That is an imitation of a jade bead." On cross-examination he testified he sold merchandise like Exhibit 2 about twenty-five years ago, and that at the present time he very seldom sells imitation jade.

As to these imitation jade bead necklaces: The provision under which claim is made is near the end of paragraph 1503, and reads as follows:

PAR. 1503. * * * all other beads in imitation of precious or semiprecious stones, of all kinds and shapes, of whatever material composed, 45 per centum ad valorem * * *.

This is followed by a proviso that the rates on spangles and beads provided in this paragraph "shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted."

The beads at bar are certainly strung into complete necklaces, and were it not for the fact that they are valued, according to the invoice, at less than 20 cents per dozen pieces, would be dutiable as jewelry under paragraph 1527, the jewelry paragraph. (*United States* v. *Flory*, 15 Ct. Cust. Appls. 156, T. D. 42219; *United States* v. *Blefeld*

*& Goodfriend*, 24 C. C. P. A. 213, T. D. 48658.) It is also apparent from the uncontradicted testimony and the sample that these articles are beads in imitation of semiprecious stones (jade) and that they are strung and mounted.

It will be observed that the applicable portion of the provision under which they were classified, reads as follows:

PAR. 1503. * * * articles * * * composed wholly or in chief value of beads or spangles (other than * * * beads in imitation of precious or semiprecious stones * * *) 60 per centum ad valorem * * *.

Inasmuch as these beads are in imitation of semiprecious stones they cannot be classifiable under this provision. We, therefore, sustain the claim of the plaintiff that they are dutiable at 45 per centum ad valorem under said paragraph 1503. (See *S. Lisk & Bro.* case, Abstract 47005, 45 Treas. Dec. 918.)

As to the item of baby shoes, Mr. Percy G. Rouse, United States examiner of general merchandise at the port of Cleveland, testified on behalf of the plaintiff. He was shown consular invoice 14597, covering entry 19, and testified he was the examiner who passed upon the item of 34 silk baby shoes. He was shown Exhibit 3, being a sample of these baby shoes, No. 34, and described them as follows:

A little pair of silk baby shoes, with a silk braid—two lines of silk braid around the top and fastened around the ankle of the baby.

He testified that in his opinion silk is the component material of chief value in these shoes; that the two rows of braid around the top are to tie the shoes on, and that both the sole and upper are composed of silk fabric.

A fourth item was covered by this protest under quality 38, clay skeleton. This item was abandoned.

As to the baby shoes:

Paragraph 1529 covers among other things articles wholly or in part of braid "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act," and places a duty thereon of 90 per centum ad valorem, if they are composed "wholly or in chief value of filaments, yarns, threads," etc. It is evident that these shoes are in part of braid, and the presumption arising from the collector's action that they are in chief value of filaments, yarns, or threads has not been disputed by the plaintiff.

Against this provision we have the claim under paragraph 1530 (e), providing, among other things, for a duty of 35 per centum ad valorem on "boots, shoes, or other footwear * * * the uppers of which are composed wholly or in chief value of * * * silk * * * whether or not the soles are composed of leather, wood, *or other materials*," and the claim under paragraph 1210 providing a duty of

65 per centum on "articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of silk, and not specially provided for."

We need not consider the claim under paragraph 1210 for the reason that shoes are specially provided for in paragraph 1530.

It will be observed that plaintiff apparently relies on the supposition that these articles are excepted from the operation of paragraph 1529 (a) by reason of the fact that it is stated therein that certain articles are excepted therefrom, among them the shoes covered by paragraph 1530 (e), and that being excepted therefrom they are dutiable under said paragraph 1530 (e) in the provision heretofore referred to.

But it has been held that such footwear for babies as Exhibit 3 is not dutiable under a provision similar to that in paragraph 1530 (e) of the present act, viz, paragraph 1405, act of 1922, which provided for "Boots, shoes, or other footwear, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, or silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other material."

The appellate court said:

It is a reasonable assumption that Congress intended, by the language used in paragraph 1405, to include only such boots, shoes, and other footwear as were manufactured with uppers and soles and that there should be on inspection some visible line of demarcation between such uppers and soles in each instance.

*United States* v. *Kahn & Co.*, 13 Ct. Cust. Appls. 57, T. D. 40881.

In the case at bar the baby shoes represented by Exhibit 3 are without any "visible line of demarcation" between the uppers and soles.

In *United States* v. *Feltman Bros., Inc.*, 22 C. C. P. A. 637, T. D. 47616, the appellate court reiterated the rule for distinguishing such baby shoes as those at bar from the footwear covered by paragraph 1530 (e) of the present act, and held as follows (see syllabus):

Certain silk footwear (bootees), embroidered, suitable for use only for babies in arms, and not intended to be used in walking, was properly held dutiable under the provision for "boots, shoes, or other footwear  *  *  *  whether or not the soles are composed of leather, wood, or other materials" in paragraph 1530 (e), Tariff Act of 1930, citing *United States* v. *Kahn & Co.*, 13 Ct. Cust. Appls. 57, T. D. 40881, and other authorities, it being conceded that there *is a line of demarcation* [Italics ours] between the uppers and the soles of the footwear. Legislative ratification of judicial interpretation also *held* applicable.

Of course, that authority is not applicable to the baby shoes at bar, which are *without a line of demarcation* between the uppers and the soles; but it is an indication that the appellate court approves the holding in the Kahn case, *supra*, and considers it applicable to the present tariff act. In the *Feltman* case, *supra*, the bootees were

held dutiable under paragraph 1530 (e) rather than under paragraph 1529 (a) by reason of the fact that such footwear as was covered by paragraph 1530 (e) is within the exception mentioned in paragraph 1529 (a).

See also *United States* v. *Field,* 13 Ct. Cust. Appls. 552, T. D. 41431.

We therefore hold that the collector properly classified the baby shoes represented by Exhibit 3 at bar.

The protest is sustained to the extent indicated as to the wooden boxes and the beads covered thereby. It is overruled as to the so-called clay skeleton and the baby shoes.

Judgment accordingly.