(C. D. 602)

ABERCROMBIE & FITCH CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 12, 1942)

*Lane & Wallace (William H. Fox* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Francis X. O'Donnell, Jr.,* special attorney), for the defendant.

Before OLIVER and WALKER, Judges

WALKER, Judge: This is a motion made on behalf of the United States for a rehearing in the above-entitled case. The merchandise involved consists of sealskin moccasins of a type manifestly used for house slippers. In our decision herein we held that such moccasins were properly classifiable under the provision in paragraph 1530 (e) of the Tariff Act of 1930 for—

* * * boots, shoes, or other footwear * * *, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other materials * * *,

that provision being, in our view, more specific than the provision in paragraph 1519 (e) of the same act for—

* * * articles * * * manufactured * * * wholly or in chief value of fur, not specially provided for, * * *.

In support of the motion counsel for the defendant has cited to us the decision of the Court of Customs and Patent Appeals in the case of *United States* v. *Feltman Bros., Inc.,* reported in 22 C. C. P. A. 637, T. D. 47616, involving footwear for babies, or "bootees," wherein that court reiterated the doctrine laid down in the case of *United States* v. *Kahn & Co.,* 13 Ct. Cust. Appls. 57, T. D. 40881, that, in order to be considered to be footwear within the meaning of the provision quoted above—

* * * there should be on inspection some visible line of demarcation between such uppers and soles in each instance.

In citing the *Feltman* case, *supra,* with which this court is thoroughly familiar, Government counsel stresses with much emphasis the language quoted above.

In reaching the conclusion which resulted in the quoted rule the Court of Customs and Patent Appeals in the *Kahn* case said:

In construing paragraph 1405, its apparent purpose must be borne in mind. Obviously, it is intended to embrace boots and shoes having uppers and soles of the various materials named in the paragraph and other footwear of a similar character. It is true that the uppers and soles of such footwear may be of wool, as well as the other materials specifically mentioned. But it manifestly was not the intent to include therein all footwear. Paragraph 1114, *supra*, provides for hose and half hose, made of wool, paragraph 916 for hose and half hose made of cotton, and paragraph 1208 for hose and half hose made of silk, and yet all these are footwear. The articles in question have a well-known name, "bootees," and resemble more nearly in their form and use hose than they do boots and shoes made with uppers and soles.

Having this language in mind, we are of the opinion that the conclusion reached by the Court of Customs and Patent Appeals in connection with the merchandise, baby bootees, involved in the *Kahn* case was correct. The articles there involved partook more of the character of hose than of boots, shoes, and footwear as those terms are generally understood. We do not believe, however, that the rule of that case should be applied so as to exclude footwear of the type at bar from the purview of paragraph 1530 (e), *supra*. The language of paragraph 1405 of the Tariff Act of 1922, and of paragraph 1530 (e) of the Tariff Act of 1930, its successor, to our minds indicates only that Congress had in mind that those provisions should cover boots, shoes, or footwear having both soles of any material and uppers of certain named materials or substitutes therefor. There is no requirement in the statute of a visible line of demarcation between sole and upper, and, indeed, the legislative history of the provision clearly indicates that it was intended to embrace, among other things, slippers of the type before us.

As introduced in the House of Representatives in 1921 the bill which was to become the Tariff Act of 1922 (H. R. 7456) contained no specific provision for boots, shoes, or footwear other than those of leather. During the hearings before the Committee on Ways and Means representations were made on behalf of manufacturers of so-called felt footwear asking that a provision be inserted into the tariff bill subjecting footwear with other than leather uppers to a higher rate of duty than that imposed upon leather footwear. See pp. 2645–2649, Hearings on General Tariff Revision before the Committee on Ways and Means, 66th Congress. The bill as reported to the House contained no such provision, and on the floor Representative Tilson of Connecticut, on July 20, 1921, offered the following amendment in the form of a new paragraph to be inserted:

Boots, shoes, or other footwear, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, silk or substitutes therefor, whether or not the soles are composed of leather, wood, or other material, 25 per cent ad valorem.

In explanation of the amendment offered, Representative Tilson at p. 4141 of vol. 61, Congressional Record, said:

> This amendment includes slippers of various kinds, the tops of which are made of silk, wool, cotton, fiber, and other materials, except leather; *it includes all slippers, whether they have soles of the same material or of leather.* [Italics added.]

and further along on the same page, he said:

> * * * It is believed to be in the interest of clearness and good business to have all gathered together under one paragraph to be known as the slipper paragraph.

Nowhere is there mentioned any requirement of a visible line of demarcation between sole and upper, and, in fact, the only reference to soles or uppers in the remarks on the floor was the following:

> Mr. BARKLEY. What is the technical interpretation of uppers? Does it include all above the sole or not?
>
> Mr. TILSON. I understand that it applies to that part of the shoe above the sole.
>
> Mr. BARKLEY. Is the gentleman sure about that?
>
> Mr. TILSON. It would include what goes over the foot, but not the sole or the inner sole.

The amendment was agreed to by the House and in slightly changed form was enacted into law by Congress.

In its decision in the *Kahn* case the Court of Customs and Patent Appeals said:

> It is a reasonable assumption that Congress intended, by the language used in paragraph 1405, to include only such boots, shoes, and other footwear as were manufactured with uppers and soles and that there should be on inspection some visible line of demarcation between such uppers and soles in each instance.

It may be pointed out that the formation of this rule was not necessary to the decision in the *Kahn* case, and is therefore in the nature of dicta, the matter hereinbefore quoted to the effect that—

> The articles in question have a well-known name, "bootees", and resemble more nearly in their form and use hose than they do boots and shoes made with uppers and soles.

being sufficient upon which to base the decision excluding such bootees from the purview of paragraph 1405, *supra*.

Mindful, however, of the language of the appellate court in formulating the rule, and with not the least thought of being critical, we feel that had the appellate court before it the legislative history hereinbefore set forth it would readily conclude that nothing therein could be construed as the intent of Congress that there should be a visible line of demarcation between the uppers and soles of the footwear provided for in paragraph 1405 of the Tariff Act of 1922.

Considering the provision of the present statute which is the successor to paragraph 1405, *supra*, we have an *eo nomine* provision which clearly and concisely covers—

\* \* \* footwear \* \* \* the uppers of which are composed wholly or in chief value of \* \* \* animal hair \* \* \* or substitutes [therefor] \* \* \* whether or not the soles are composed of \* \* \* other materials \* \* \*.

and the imported articles unquestionably fall within that language when given its ordinary meaning, that is to say, they are footwear, the uppers of which are composed wholly or in chief value of fur, a substitute for animal hair, with soles of the same material.

We have carefully read the decisions cited by the Court of Customs and Patent Appeals in its decision in the *Feltman* case, namely, *United States* v. *Shokai*, 14 Ct. Cust. Appls, 392, T. D. 42033, and *United States* v. *North American Mercantile Co.*, 17 C. C. P. A. 378, T. D. 43820, and analyzing the subjects of the importations therein involved, namely, Japanese clogs and straw sandals, as well as the subjects of the *Kahn* and *Feltman* cases, which involved baby bootees, it may be readily concluded that the appellate court did not in any of those cases have in mind such articles as are involved in the instant case.

We are not unmindful of the rule of legislative approval of judicial interpretation, cited by the appellate court in the *Feltman* case as follows:

\* \* \* After very careful consideration, this court in the *Kahn & Co.* case definitely held that "there should be on inspection some visible line of demarcation between such uppers and soles in each instance." This holding was made with reference to paragraph 1405, Tariff Act of 1922. Congress in the Tariff Act of 1930, in respects material here, used substantially the same language which it had used in the Tariff Act of 1922. This we regard as legislative approval of judicial interpretation.

The rule cited is a canon of construction and must yield if a contrary intent of the legislature is otherwise ascertained. *L. R. Markell et al* v. *United States*, 16 Ct. Cust. Appls. 518, T. D. 43239. We think it clear that it was the intention of the legislature that slippers such as those at bar should be classified under the provisions of paragraph 1405 of the Tariff Act of 1922 and its successor paragraph in the existing statute.

The *Kahn* and *Feltman* cases, when carefully analyzed, have no real application to the facts in this case because in the former case there were involved bootees, infant footwear, resembling hose or stockings. In the instant case, however, the imported article, regardless of what name is applied to it, is unquestionably footwear as outlined in paragraph 1530 (e) of the Tariff Act of 1930. To hold otherwise would, in truth and in fact, lead to the illogical conclusion that an article specifically mentioned *eo nomine* in the paragraph as footwear, was not in fact footwear.

For the foregoing reasons the motion for rehearing is denied.