UNITED STATES *v.* ABERCROMBIE & FITCH Co. (No. 4392)[1]

United States Court of Customs and Patent Appeals, November 2, 1942

*Paul P. Rao,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Richard F. Weeks,* special attorney, of counsel), for the United States.

No appearance for appellee.

[Oral argument October 6, 1942, by Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal is brought by the United States from a judgment of the United States Customs Court sustaining the protest of the importer, appellee here, which claimed that certain fur moccasins were properly dutiable as footwear, at 35 per centum ad valorem, under paragraph 1530 (e) of the Tariff Act of 1930, and not as manufactures of fur, at 50 per centum ad valorem, under paragraph 1519 (e) of the said act, as assessed for duty by the Collector of Customs at the port of New York.

---

[1] C. A. D. 217.

Paragraphs 1519 (e) and 1530 (e) of the Tariff Act of 1930 read as follows:

PAR. 1519 * * * (e) Articles, wholly or partly manufactured (including fur collars, fur cuffs, and fur trimmings), wholly or in chief value of fur, not specially provided for, 50 per centum ad valorem.

PAR. 1530 * * * (e) Boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for, 20 per centum ad valorem; boots, shoes, or *other footwear* (including athletic or sporting boots and shoes), *the uppers of which are composed wholly or in chief value of* wool, cotton, ramie, *animal hair,* fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, *whether or not the soles are composed of leather, wood, or other materials, 35 per centum ad valorem.* [Italics ours.]

The question we are asked to decide, therefore, is whether the imported merchandise should be classified as "footwear, * * * the uppers of which are composed wholly or in chief value of * * * animal hair," as claimed by the importer and sustained by the trial court, or as "articles * * * manufactured * * * wholly or in chief value of fur, not specially provided for," as contended by the Government.

In the court below, two opinions were rendered, the last one after petition by the Government for a rehearing, which was denied. In this court, we have not had the benefit of brief or of oral argument by appellee, but only of brief and oral argument by appellant.

Exhibit 1, which is a sample of the imported merchandise, consists of a pair of moccasins, the exterior of which is of sealskin and the interior of lambskin. Each moccasin comprises two pieces of sealskin. One piece is but an insert, covering the top front part of the foot. The other piece forms the bottom and curves up over the sides of the foot, the front of the toes, and the heel. These two pieces are joined over the top of the foot with a bit of red leather trimming.

We think the decision of the issue presented in this appeal is controlled by previous decisions of this court which we will briefly discuss. In *United States* v. *Kahn & Co.,* 13 Ct. Cust. Appls. 57, T. D. 40881, we had before us babies' knit footwear, composed wholly or in chief value of wool, which was described by one witness as follows:

The merchandise is what is known as infants' bootees * * *. It is a continuation of the knitting from the top to the bottom.

The collector classified the importation as "outerwear * * * knit, etc." The importer claimed that the merchandise should have been classified as "other footwear" under paragraph 1405 of the Tariff Act of 1922, which, in all respects material here, is identical with the provisions of paragraph 1530 (e) of the Tariff Act of 1930 under consideration here. In discussing said paragraph 1405, the court said:

In construing paragraph 1405, its apparent purpose must be borne in mind. Obviously, it is intended to embrace boots and shoes having uppers and soles of

the various materials named in the paragraph and other footwear of a similar character. It is true that the uppers and soles of such footwear may be of wool, as well as the other materials specifically mentioned. But it manifestly was not the intent to include therein all footwear. Paragraph 1114, *supra*, provides for hose and half hose, made of wool, paragraph 916 for hose and half hose made of cotton, and paragraph 1208 for hose and half hose made of silk, and yet all these are footwear. The articles in question have a well-known name, "bootees," and resemble more nearly in their form and use hose than they do boots and shose made with uppers and soles.

It is a reasonable assumption that Congress intended, by the language used in paragraph 1405, to include only such boots, shoes, and other footwear as were manufactured with uppers and soles and that there should be on inspection some visible line of demarcation between such uppers and soles in each instance. * * *

In *United States* v. *Feltman Bros., Inc.*, 22 C. C. P. A. (Customs) 637, T. D. 47616, we had before us silk footwear, called "bootees for babies," which was elaborately embroidered. It was classified as "articles embroidered" and assessed with a 90 per centum ad valorem duty. The importer claimed the merchandise to be dutiable under paragraph 1530 (e) of the Tariff Act of 1930, *supra*, and the United States Customs Court sustained the protest in part, because of the fact that some of the bootees had a definite line of demarcation between the sole and the upper. The Government appealed to this court. In our opinion we quoted extensively from *United States* v. *Kahn & Co.*, *supra*, and said:

We cannot agree with the contentions of the Government. While paragraph 1530 (e) is associated with leather and leather articles, it nevertheless provides for footwear which contains no leather. After very careful consideration, this court in the *Kahn & Co.* case definitely held that "there should be on inspection some visible line of demarcation between such uppers and soles in each instance." This holding was made with reference to paragraph 1405, Tariff Act of 1922. Congress, in the Tariff Act of 1930, in respects material here, used substantially the same language which it had used in the Tariff Act of 1922. This we regard as legislative approval of judicial interpretation.

The *Kahn* case was before Congress when it passed the Tariff Act of 1930, and it must be presumed that Congress was cognizant of the holding of this court that it intended that footwear which was to be dutiable under the language used in paragraph 1530 (e) should be such footwear as had soles and uppers. We repeat here, in substance, what we said in the *Feltman* case. We think Congress approved of our interpretation of the paragraph.

The court below attempted to distinguish the instant case from the *Kahn* and *Feltman* cases by pointing out that they involved wholly different kinds of goods. We see no distinction between the goods in those cases and the goods in this case, so far as the particular issue presented here is concerned. We held—and Congress, by reenacting the provision in substantially the same language, approved our

said holding—that the language used in paragraph 1530 (e) required, under the general provision for "other footwear," that the article must have a sole and an upper. While the instant merchandise has a bottom and a top, it does not have any sole; and if it does not have a sole, it is difficult to see how it could be said to have an upper, within the meaning of that term in paragraph 1530 (e).

In the *Kahn* case it was pointed out, in no uncertain terms, that for an article of footwear to have soles and uppers, there must be some line of demarcation between sole and upper. There is no line of demarcation indicating sole and upper in the merchandise at bar, and therefore, under the plain holding of this court, such articles, having no soles or uppers, do not fall within the provisions of paragraph 1530 (e).

The principle upon which the *Kahn* and *Feltman* cases rest is that where Congress uses *eo nomine* terms, followed by a general term, and then by additional language modifies, limits, or extends the scope of the general term, such language usually is regarded as reflecting character of articles intended to be included by the general provision. When Congress spoke of footwear and in the same paragraph referred to the soles and uppers of such footwear, it seems reasonable to conclude that it had in mind only such footwear as possessed those characteristics. The doctrine of the *Kahn* and *Feltman* cases is not a new one.

In arriving at congressional intent, all the language used must be considered. For instance, this court, in *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110, following well-considered decisions of the Supreme Court of the United States and Circuit Courts of Appeals, held that earthenware rings, which were not susceptible of decoration, did not fall within the so-called chinaware paragraph, for the reason that at the end of the paragraph Congress added, "if painted, tinted, stained, enameled, printed, gilded, or otherwise decorated or ornamented in any manner, sixty per centum ad valorem; if not ornamented or decorated, fifty-five per centum ad valorem." The articles there involved were not susceptible of being decorated in the manner suggested by the above-quoted limitation.

The holding in the *Fensterer* case has been consistently followed by this court.

Funk & Wagnalls New Standard Dictionary, 1942 Edition, defines "upper" as:

"That part of a boot or shoe above the sole and welt", and "sole" as:

"The bottom of a *shoe, boot, sandal,* or *slipper*." [Italics ours.]

It will be noted that in the above definition of a sole are the terms, "shoe," "boot," "sandal," and "slipper," all of which are known to

have uppers and soles with a visible line of demarcation between the two. The bottom of a shoe is of course the sole, but the bottom of a. moccasin is not a sole, within the meaning of that term in the paragraph under consideration.

Soles and uppers (particularly the latter) have been listed in various. tariff acts as separate and distinct articles of merchandise. See paragraph 438, Tariff Act of 1897; paragraph 451, Tariff Act of 1909; paragraph 530, Tariff Act of 1913; paragraph 1606, Tariff Act of 1922; paragraph 1530 (b) (1) and (4), Tariff Act of 1930.

In the instant case there is nothing in the legislative history to suggest that Congress contemplated that footwear without soles or uppers should find classification in the controverted provision of paragraph 1530 (c). The judgment of the United States Customs Court. is therefore *reversed*.